UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| CLAIRE ADAMS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 1:17-CV-00229-LEW |
| | ) | |
| PENOBSCOT COMMUNITY HEALTH CARE, ATHENAHEALTH, INC., AND DAVID LOXTERKAMP, MD, | ) ) ) | |
| | ) | |
| Defendants | | |

**MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS AND PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

Through her Motion for Leave to File Second Amended Complaint (ECF No. 48), Plaintiff Claire Adams abandons her "qui tam" action. What remain are a federal whistleblower claim advanced under the False Claims Act and a state law whistleblower claim advanced under the Maine Whistleblower Protection Act and the Maine Human Rights Act.

Through her Motion for Leave to File Second Amended Complaint, Plaintiff endeavors to reinforce her whistleblower claims in response to arguments pressed by Defendants through their Motions to Dismiss (ECF Nos. 45 & 46). I **GRANT** Plaintiff's motion to replace the First Amended Complaint with the Second Amended Complaint and will evaluate Defendants' motions based on the allegations found in the Second Amended Complaint.

## PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff's non-conclusory factual allegations are accepted as true for purposes of ruling on Defendants' motions to dismiss.

Plaintiff Claire Adams was the Practice Director for Penobscot Community Health Care ("PCHC) at its Seaport Community Health Center ("Seaport"), beginning in October 2013 and ending with her June 5, 2015 suspension and June 17, 2015 resignation in lieu of termination.

Defendant PCHC is a federally qualified health center with its headquarters and principal place of business in Bangor, Maine. Defendant David Loxterkamp, MD, was PCHC's Medical Director for Seaport when Ms. Adams served as Seaport's Practice Director. Dr. Loxterkamp was also a member of the physician advisory board for Defendant athenahealth.

Defendant athenahealth is a software company with its headquarters and principal place of business in Watertown, Massachusetts. PCHC and athenahealth are parties to a "master service agreement" pursuant to which Seaport was to become a showcase demonstration practice for athenahealth's software products and services, in exchange for free use of athenahealth's electronic medical record (EMR) software products, use of a newly renovated and fully furnished state-of-the-art medical facility in Belfast owned by athenahealth at below-market rental rates, and free "consulting services" concerning the design and operations of Seaport's facility and practice.

In August of 2014, after Seaport moved into athenahealth's facility, Seaport began to work on implementation of an athenahealth-promoted tablet product meant to streamline the

patient appointment check-in process. Shortly after implementation, Ms. Adams raised concerns in writing to PCHC management that the tablet and related software may not work well with the practice's electronic medical record, may divulge some patient information to athenahealth, and may prevent providers from having ready access to an accurate digest of relevant patient information and history.

Plaintiff's efforts in this regard were viewed as obstructionists by certain pivotal personalities at PCHC, including Defendant Loxterkamp, who was sufficiently angered by Plaintiff's failure to go with the flow concerning the tablet software, a second software product subsequently rolled out by athenahealth, and other matters of great concern to athenahealth, that he threatened to resign if PCHC did not remove Plaintiff from her position. In this regard, Dr. Loxterkamp and athenahealth prevailed, but PCHC was kind enough to let Plaintiff retire in lieu of termination. Following Plaintiff's departure, PCHC hired athenahealth's project manager in her stead.

A few weeks before her departure, Plaintiff voiced certain concerns in person to Lori Dwyer, PCHC's Chief Compliance Officer. Specifically, Plaintiff observed that PCHC, at its Seaport practice, engaged in the practice of referring all MaineCare patients who were referred to physical therapy for the maximum number of physical therapy appointments allowed by MaineCare at Seaport's in-house physical therapy department. Plaintiff indicated it was her opinion that the referrals were irrespective of medical need because PCHC encouraged patients to attend the maximum number of available physical therapy appointments at Seaport. Plaintiff also indicated to Ms. Dwyer that billing the MaineCare Medicaid program for those appointments could be fraudulent.

Based on these material allegations, Plaintiff asserts in one count two separate claims of whistleblower retaliation. The first claim arises under the federal False Claims Act and serves as the foundation for this Court's exercise of jurisdiction over the matter. The second claim arises under the Maine Whistleblower Protection Act and the Maine Human Rights Act. In summary, Plaintiff alleges she was terminated for blowing the whistle on MaineCare-billing and patient-safety concerns. Plaintiff further alleges that her claims run not only against PCHC, her official employer, but also against Dr. Loxterkamp and athenahealth.

## DISCUSSION

To avoid dismissal, Plaintiff's complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Practically speaking, this means the complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In applying this standard, the Court will accept factual allegations as true and consider whether the facts, along with reasonable inferences that may arise from them, describe a plausible, as opposed to merely conceivable, claim. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011); *Sepúlveda–Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010).

For reasons that follow, Plaintiff has failed to state a claim of whistleblower retaliation under the federal False Claims Act. As a consequence, that claim will be dismissed with prejudice. As a further consequence, the Court is deprived of jurisdiction over the remaining state whistleblower claim. The state claim, therefore, will be dismissed without prejudice.

**A.    Federal False Claims Whistleblower**

The False Claims Act ("FCA"), 31 U.S.C. §§ 3729 – 3733, prohibits the knowing

presentation of false or fraudulent claims to the federal government, and defines a claim as a request for payment or reimbursement from the government. *Guilfoile v. Shields*, 913 F.3d 178, 187 (1st Cir. 2019); 31 U.S.C. § 3729(a), (b). The FCA permits individuals to institute a civil action to recover government funds lost to fraud and abuse, on behalf of the United States. 31 U.S.C. § 3730(b). Such actions are traditionally known as "qui tam" actions, *id.* § 3730(c), and the persons who pursue them are known as "relators." *E.g.*, *U.S. ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 727 (1st Cir. 2007). Plaintiff attempted to advance a qui tam action in the first count of her original complaint, and in her amended complaint, but has abandoned the qui tam action in her operative Second Amended Complaint.[1]

Separate from its qui tam provisions, section 3730(h) of the FCA creates a cause of action for an employee "to make that employee … whole, if that employee … is … discriminated against in the terms and conditions of employment because of lawful acts done by the employee … in furtherance of an action under [the FCA] or other efforts to stop 1 or more violations of [the FCA]." 31 U.S.C. § 3730(h). Such a claim is generally known as a FCA whistleblower or FCA retaliation claim. "To prevail on an FCA retaliation claim, a plaintiff must show that: 1) the employee's conduct was protected under the FCA; 2) the employer knew that the employee was engaged in such conduct; and 3) the employer discharged or discriminated against the employee because of his or her protected conduct." *Manfield v. Alutiiq Int'l Sols., Inc.*, 851 F. Supp. 2d 196, 201 (D. Me. 2012).

---

[1] Plaintiff also asserted a claim, since abandoned, under the "Anti-Kickback" statute, 42 U.S.C. § 1320a-7b. Complaint Count II; First Amended Complaint Count I. Because Plaintiff has abandoned the claim in her Second Amended Complaint, and because the claim does not otherwise inform the analysis of Plaintiff's FCA whistleblower claim, the anti-kickback claim receives no further mention herein.

5

PCHC and athenahealth argue Plaintiff has failed to allege any protected conduct to satisfy the first element of her FCA retaliation claim. PCHC says the conduct that Plaintiff may have voiced objection to was not the presentation of any false claims to the government for payment. PCHC Defendants' Motion at 14 – 16. Athenahealth concurs, and adds that even if there was protected conduct, athenahealth had no connection to any conduct related to the submission of claims for payment from the government. Athenahealth's Motion at 8 – 10.

Protected conduct under the FCA includes acts undertaken "in furtherance of … efforts to stop" a violation of the FCA. *Manfield*, 851 F. Supp. 2d at 202. While this standard encompasses, potentially, a great many kinds of efforts to stop fraud and abuse in federal programs, those efforts must address fraud and abuse, i.e., the knowing submission of false claims that can lead to an action under the FCA. *United States ex rel. Booker v. Pfizer, Inc.*, 847 F.3d 52, 60 (1st Cir. 2017). Even at the motion to dismiss stage, FCA retaliations claim are subject to dismissal if the allegedly protected conduct amounts to mere efforts to ensure regulatory compliance, rather than the investigation and report of "actual fraudulent conduct." *Id.*; *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 237 (1st Cir. 2004). "Evidence of an actual false claim is the *sine qua non* of a False Claims Act violation." *Karvelas*, 360 F.3d at 225.

Plaintiff argues the alleged facts support her FCA retaliation claim. In particular, she observes that shortly before she was suspended by PCHC, she "raised concerns" with Ms. Dwyer that Seaport "engaged in a widespread practice of referring all MaineCare patients who were referred to physical therapy for the maximum number of physical therapy

6

appointments allowed by MaineCare at Seaport's in-house physical therapy department, irrespective of medical need, … and subsequently billing the MaineCare Medicaid program for those appointments." Plaintiff's Response to PCHC's Motion at 3. She alleges she told Ms. Dwyer that the alleged practice "could be fraudulent." *Id.*

I am not persuaded that it is a plausible act of fraud for a provider to advise patients who qualify for physical therapy benefits under MaineCare to utilize those benefits fully, or that it is a false claim to bill the government for the actual provision of those services when the patient chooses to obtain physical therapy from the provider's practice. While Plaintiff allegedly expressed a concern over PCHC's financial interest in self-referral, Plaintiff's concern for "medical need" in this patient-care context is utterly vague and conclusory insofar as any fraud or false claim is concerned. After all, Plaintiff has not even alleged facts in the Second Amended Complaint that would suggest PCHC's practitioners ever failed to comply with MaineCare program requirements for the delivery or billing of physical therapy services, and *Booker* and *Karvelas* teach that clearing even that lower hurdle (expressing a concern over regulatory compliance) would not suffice to state a retaliation claim under the FCA.

Given the lack of any facts plausibly suggesting a knowing failure to comply with regulatory requirements, let alone facts plausibly suggesting that PCHC, in fact, presented any false claims for payment, Plaintiff's expression of concern to Ms. Dwyer that MaineCare patients might maximize their physical therapy benefits with PCHC providers is not the kind of conduct or effort that implicates the anti-fraud and anti-abuse objectives of the FCA.

Plaintiff's second attempt to identify conduct protected under the FCA deserves even less comment. Plaintiff contends that PCHC retaliated against her based on her efforts to

7

apply the brakes to PCHC's implementation of athenahealth's software products, based on her concerns related to various patient and practitioner interests, including patient health and safety. *Id.* at 3 – 4. Plaintiff's concerns about the efficacy of athenahealth's products did not involve the presentation of false claims to the government and, consequently, they do not amount to protected conduct under the FCA.

Because Plaintiff's Second Amended Complaint does not reveal any conduct protected under the FCA, Plaintiff has failed to state a claim of FCA whistleblower retaliation. This means the claim is subject to dismissal as against every Defendant, without the need to consider the additional challenges raised by Dr. Loxterkamp and athenahealth about whether they can be liable as "employers" under the FCA.

**B.     Maine Whistleblower Protection Act Claim**

In addition to her FCA whistleblower retaliation claim, Plaintiff advances a related claim under the Maine Whistleblower Protection Act (WPA), 26 M.R.S. § 831 – 840. The WPA supplies a broader standard for what constitutes protected activity, including reports about "a condition or practice that would put at risk the health or safety of that employee or any other individual." 26 M.R.S. § 833(1)(B); *Cormier v. Genesis Healthcare LLC*, 129 A.3d 944, 948 (Me. 2015).

Because this is a court of limited jurisdiction, and because the only federal claim will be dismissed, and complete diversity of citizenship does not exist between Plaintiff and Defendants, I decline to exercise supplemental jurisdiction and will dismiss Plaintiff's WPA claim for lack of jurisdiction, without prejudice to Plaintiff's right to pursue the claim in state court. *See* 28 U.S.C. §§ 1331, 1332, 1367.

## CONCLUSION

Plaintiff's Motion for Leave to File Second Amended Complaint (ECF No. 48) is **GRANTED**. Plaintiff's Second Amended Complaint supersedes Plaintiff's prior pleadings and serves as the operative pleading in this case. Because the Second Amended Complaint does not include the qui tam claim(s), they will be treated as abandoned by Plaintiff, without prejudice to the Government's interest in any related matters. However, before the qui tam proceeding is docketed as dismissed, the United States Attorney General must provide written consent to the dismissal, pursuant to 31 U.S.C. § 3730(b). The Court requests that consent in writing be provided within 30 days of this Order and directs the Clerk not to enter judgment until such time as consent is obtained.

Defendant athenahealth's Motion to Dismiss (ECF No. 45) and the Motion of Defendants Penobscot Community Health Care and Dr. David Loxterkamp to Dismiss for Failure to State a Claim (ECF No. 46) are **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's FCA retaliation claim is **DISMISSED WITH PREJUDICE.** Plaintiff's Maine whistleblower claim is **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

**SO ORDERED.**

Dated this 19th day of November, 2019.

/s/ Lance E. Walker
**LANCE E. WALKER**
**UNITED STATES DISTRICT JUDGE**